

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
12/11/2020

| | | |
|---|---|---|
| IN RE: | § | |
| VANGUARD NATURAL RESOURCES, | § | **CASE NO: 17-30560** |
| LLC,          Debtor. | § | |
| | § | **CHAPTER 11** |
| | § | |
| VANGUARD OPERATING, LLC, | § | |
|      **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 18-3178** |
| | § | |
| **MICHAEL L. KLEIN,** *et al*, | § | |
|      **Defendants.** | | |

## AMENDED MEMORANDUM OPINION

This Memorandum Opinion resolves cross-motions for summary judgment filed by the parties—Vanguard Operating, LLC and Michael Klein, et al.[1]  The dispute centers on the continued existence of a net profits interest[2] granted to the NPI Owners' predecessors.  Vanguard seeks a declaration that the net profits interest was extinguished on confirmation of its plan of reorganization.  The NPI Owners contend that the net profits interest was unaffected by Vanguard's Plan.  The motions raise two issues: (1) whether this Court is bound by a judgment from a state-court lawsuit (the "Wyoming Litigation") waged over the existence of the net profits interest; and (2) whether, in light of the outcome of the Wyoming Litigation, Vanguard's Plan extinguished the net profits interest.

---

[1] The Defendants in this adversary proceeding are Michael L. Klein, Jeanne Klein, Merlyn M. Westbrook, individually and as personal representative of the estate of Ronnie H. Westbrook, James Lynn Westbrook, as personal representative of the estate of Karen Westbrook, Doyle Hartman, Margaret M. Hartman, and Carol W. Hendrix, individually as trustee of the Carol Weiss Marital Trust, and as personal representative of John H. Hendrix (collectively, the "NPI Owners").  (ECF No. 12 at 2).

[2] In its Complaint, Vanguard calls this interest the "NPI Obligation" and characterizes it as a "conditional promise . . . to pay money."  (ECF No. 1 at 10).

The Court is bound by the judgment of the Wyoming Litigation.  Because the Court is bound, the Court must adhere to the Wyoming district court's finding that the net profits interest is a covenant running with the land.  The net profits interest was unaffected by Vanguard's Plan.  Summary judgment is granted to the NPI Owners.

### BACKGROUND[3]

*The Net Profits Interest*

The net profits interest at the center of this dispute originated from the creation of the Pinedale Unit in Wyoming's Pinedale Basin. In the 1950s, Malco Refineries, Inc., El Paso Natural Gas Company, and Continental Oil Company (together, the "First Parties") were granted the right to develop land in the Pinedale Basin by the United States Bureau of Land Management under the Pinedale Unit Agreement. (ECF No. 49 at 3–4).  Thereafter, the First Parties began exploration of the land in the Pinedale Unit. (ECF No. 1 at 4).  The First Parties' aim was to develop their leases in the Pinedale Unit for oil and gas production.  In connection with their efforts to develop the Pinedale Unit, the First Parties entered into an Assignment Agreement with Novi Oil Company.

Under the Assignment Agreement, Novi transferred four mineral leases to the First Parties in exchange for a net profits interest ("NPI"). Pursuant to the Assignment Agreement, Novi was entitled to "5% of the net profits realized from operation for oil and gas by the First Parties under the leases."  (ECF No. 45 at 4).  Additionally, the parties executed the Pinedale Unit Area Net Profits Contract ("NPC"), detailing how the NPI was to be calculated.  (ECF No. 49 at 4).  In pertinent part, the NPC provided: (1) the NPI entitled Novi to "5% of the net profits . . . resulting

---

[3] The parties, leases, contracts, property, and interests set forth in this Background section have been the subject of other Memorandum Opinions and a Report and Recommendation to Withdraw the Reference previously issued by this Court.  (*See* Case No. 16-03250, ECF Nos. 50, 71; Case No. 16-43303, ECF No. 1810; Case No. 17-03044, ECF No. 116).  Accordingly, a substantial portion of this Background was written in reliance on both the Court's previously issued Memorandum Opinions and the parties' briefing, and therefore does not constitute findings of fact and conclusions of law by this Court.

from operations for oil and gas by First Parties, or any of them, under those certain leases;" and (2) that "net profits" meant "the gross revenue (not required for payment of overriding royalties . . .) from unit operations allocable to said leases after deduction of all expenses of unit operation . . . ." (ECF No. 2 at 2–3). The NPC was supplemented by a Supplemental Accounting Agreement between the parties, which detailed how the First Parties were to account for and pay Novi amounts due under the NPI. *Ultra Res., Inc. v. Hartman*, 226 P.3d 889, 899 (Wyo. 2010) (*Hartman I*). On July 26, 1954, the United States Geological Survey (USGS) approved the Pinedale Unit consistent with the Assignment Agreement. Both the NPC and the Supplemental Accounting Agreement were properly recorded in Sublette County, Wyoming.

*The NPI Owners' Acquisition of the NPI*

In the decades following the creation of the NPI, Novi conveyed its NPI to various successors. *Hartman I*, 226 P.3d at 902. For decades, no payments were made by or to any party pursuant to the NPI because production was "impracticable." *Id.* In 1977, the Pinedale Unit was contracted to roughly one-quarter of its original acreage. *Id.* The Pinedale Unit terminated in 1981 without ever earning any profits. *Id.*

However, two units were created out of the Pinedale Unit in the years following its termination. *Id.* One unit was known as the Mesa Unit. The agreement creating the Mesa Unit provided that the Mesa Unit was subject to the Pinedale Unit Agreement. *Id.* Further, the agreement provided that the Pinedale Unit Agreement would merge into the Mesa Unit Agreement in the event oil and gas were produced in paying quantities. *Id.*

In 2005, leases within the Mesa Unit, which were burdened to the NPI, became profitable. *Id.* At that time, the NPI Owners sent a letter to the holders of working interests in the leases

burdened by the NPI demanding an accounting and payment of the NPI. *Id.* at 902–03.[4] The NPI Owners' demand was denied by those Working Interest Holders. *Id.* at 902. The NPI Owners then filed suit against the Holders to enforce the NPI. *Id.*

*The Wyoming Litigation*

Central to the ensuing lawsuit was whether the NPI survived the termination of the Pinedale Unit. *Id.* at 903. The Working Interest Holders asserted that the NPI terminated along with the Pinedale Unit. *Id.* Without the Pinedale Unit, the Holders argued that the NPI no longer burdened the leases in which they held interests. *Id.*

The Wyoming district court disagreed. Finding that the NPI was a "covenant running with the leases," which was "analogous to a royalty interest," the district court concluded that the NPI "was not dependent on the continuation and/or modification of the Pinedale Unit." *Hartman v. Group A Questar Exploration and Production Co.*, No. 06-6843, 2007 WL 7118254, at 5, 9 (Wyo. Dist. Ct. Aug. 01, 2007). Moreover, in its Findings of Facts and Conclusions of Law, the district court found that "Ultra, SRMP, *Lance*, SWEPI, Williams and Arrowhead"[5] were each, as successors to the First Parties, "liable for payment of the NPI, which is a covenant running with the land." *Hartman v. Group A Questar Exploration and Production Co.*, No. 2006-6843, 2008 WL 7701150, at 18 (Wyo. Dist. Ct. Apr. 11, 2008) (emphasis added). Because it was a covenant running with the land, the NPI continued to burden the Interest Holders' leases, obligating the Holders to pay the NPI. *Id.* at 22. Additionally, the district court found that the NPI Owners held

---

[4] Specifically, the NPI Owners demanded payment from two sets of working interest holders: "Group A defendants—Questar Exploration and Production Company ("Questar"), Wexpro Company ("Wexpro"), Ultra Resources, Inc., ("Ultra"), and Shell Rocky Mountain Production, L.L.C. ("Shell")—*working interest owners and operators in the Pinedale Field*; and Group B defendants—Lance Oil & Gas Company ("Lance"), SWEPI, LP ("SWEPI"), Williams Production Rocky Mountain Co. ("Williams"), and Arrowhead Resources (U.S.A.) LTD ("Arrowhead")—*working interest owners in the Pinedale Field with no operating responsibilities*." *Hartman I*, 226 P.3d at 902–03 (emphasis added). These Working Interest Holders were successors to the First Parties. *Id.* at 904.

[5] Lance Oil & Gas Company is a predecessor of Vanguard Operating, LLC. *See infra*.

4.98% ownership interest in the NPI.  *Id.*  That interest entitled the NPI Owners to 4.98% of the net profits of operations under the burdened leases.  *Id.*

All parties appealed from the district court's ruling.  Among other things, the Wyoming Supreme Court addressed the district court's conclusions that the NPI did not terminate with the Pinedale Unit and that the NPI Owners owned the NPI.  *Hartman I*, 226 P.3d at 905, 910–11.  First, the Wyoming Supreme Court held that the NPI "continued to encumber the relevant leases after" the termination of the Pinedale Unit.  *Id.* at 910.  Second, the Court reversed the judgment of the district court to the extent the district court attempted to quiet title to the NPI in the NPI Owners "against any claims by others who [were] not parties to" the Wyoming Litigation.  *Id.* at 913. However, the Court's holding as to ownership of the NPI was predicated on the parties' failure to present a justiciable controversy as to the ownership of the NPI.  *Id.*  Essentially, no party to the Wyoming Litigation challenged the NPI Owners' interest in the NPI, nor did any party appear to claim an ownership interest in the NPI.  *Id.* at 910–13.[6]  Despite its holding that it was not empowered to quiet title to the NPI, the Court nevertheless held that the NPI Owners had established a right to payment under the NPC.  *Id.* at 913.

The Wyoming Supreme Court praised the district court for arriving at "what was essentially a correct resolution of the case."  *Id.* at 939.  However, the Supreme Court remanded the case because the district court incorrectly determined how net profits were to be calculated under the NPC.  *Id.* at 940.  Further, the Supreme Court reversed, without directing the district court to reconsider, the district court's attempt to quiet title to the NPI, as well as its finding of joint and

---

[6] Notably, Vanguard asserted in its Declaratory Complaint, as well as in its subsequent Motion for Summary Judgment, that it, not the NPI Owners, owned the NPI.  (ECF Nos. 1 at 9–10; 48 at 13–15).  Vanguard, however, appears to have abandoned this argument, as evidenced by the position taken in its supplemental brief that the NPI was either an "encumbrance" or a "right to payment arising from a Royalty and Working Interest."  (ECF No. 69 at 8).

several liability among the non-operators. *Id.* at 939–40. In all other respects, the Court affirmed the district court's judgment. *Id.*

On remand, the Wyoming district court issued an Amended Judgment conforming its original judgment to the Opinion of the Wyoming Supreme Court. *See generally Hartman v. Questar Exploration and Production Co.*, No. 20066843, 2010 WL 10827093 (Wyo. Dist. Ct. Dec. 08, 2010) (*Hartman II*). In its Amended Judgment, the district court reiterated its conclusion that the NPI continued to burden the Holders' leases after the termination of the Pinedale Unit. *Id.* at *15. The Amended Judgment did not alter the district court's original conclusion that the NPI is a covenant running with the land. *Id.* at *12, 15. Additionally, the district court incorporated by reference its finding that the NPI was analogous to a royalty interest. *See id.* at *14 ("The Court's orders granting the plaintiffs' Motions for Partial Summary Judgment No. 1 and No. 2 dated August 1 and August 10, 2007 be, and the same are incorporated herein as if fully set forth."); *see also Hartman*, 2007 WL 7118254, at 5 ("This Court concludes that the net profits interest at issue in this case is leased based, that it is analogous to a royalty interest."). No party to the Wyoming Litigation appealed the district court's conclusions regarding the nature of the NPI.

## PROCEDURAL HISTORY

### *Vanguard's Bankruptcy*

Nearly seven years later, Vanguard Natural Resources, LLC, and various subsidiaries, filed voluntary petitions for relief under chapter 11 the Bankruptcy Code. Among those subsidiaries was Vanguard Operating LLC, the plaintiff in this case. (Case No.17-30560, ECF No. 3 at 8). Vanguard's Joint Plan of Reorganization was confirmed on July 18, 2017. (Case No.17-30560, ECF No. 1109).

The Court's order confirming Vanguard's Plan of Reorganization included a Vesting Clause. The Vesting Clause provides:

> <u>Vesting of Assets</u>. Pursuant to section 1141(b) and (c) of the Bankruptcy Code, *except as otherwise provided in the Plan*, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor, *free and clear of all Liens, Claims, charges or other encumbrances*.

(Case No. 17-30560, ECF No. 1109 at 4 (emphasis added)).  Additionally, Vanguard's Plan of Reorganization included a clause, which purported to preserve "Royalty and Working Interests" in leases held by Vanguard (the "RWI Clause").  Specifically, the RWI Clause provided that "all Royalty and Working Interests shall be preserved and remain in full force . . . with the terms of the granting instruments or other governing documents . . . and no Royalty and Working Interests shall be compromised or discharged by the Plan."  (Case No. 17-30560, ECF No. 1096 at 58).  The Plan defines "Royalty and Working Interests" as: "working interests granting the right to exploit oil and gas, and certain other royalty or mineral interests, including but not limited to, landowner's royalty interests, overriding royalty interests, *net profit interests*, non-participating royalty interests, and production payments."  (Case No. 17-30560, ECF No. 1096 at 26 (emphasis added)).

Vanguard's assets, which Vanguard contends vested in Reorganized Vanguard pursuant to the Vesting Clause, include interests held in oil and gas leases covering the former Pinedale Unit.[7] Specifically, Vanguard holds working interests in the Pinedale Field. (ECF No. 1 at 7).[8]  The NPI burdens leases in which Vanguard holds working interests.

---

[7] Vanguard refers to these interests as the "Pinedale Assets."  (ECF No. 1 at 7).

[8] At issue in the Wyoming Litigation were twenty-three leases in the Pinedale Field.  *Hartman*, 2008 WL 7701150, at *3–4, 16–18.  A chain of title establishes that the working interests in these leases are the same working interests Vanguard now holds.  And these working interests are identical to the interests held by Lance, a party to the Wyoming Litigation.  Vanguard acquired Encore Energy in 2015.  (ECF No. 68-5 at 2).  Prior to Vanguard's acquisition of Encore, Encore acquired interests in the leases burdened by the NPI through an assignment from

*Vanguard's Complaint*

On June 29, 2018, Vanguard Operating, LLC initiated this adversary proceeding attempting to discharge the NPI burdening its working interest.[9] Vanguard's Complaint set forth the following claims against the NPI Owners:

    i.        Count I. A declaration that the Pinedale Assets, along with all proceeds and profits therefrom are property of the estate pursuant to 11 U.S.C. § 541.

    ii.       Count II. A declaration that the "NPI Obligation" pursuant to the Net Profits Contract is a general unsecured claim.

    iii.      Count III. A declaration that the Pinedale Assets, along with all proceeds and profits therefrom, vested in Vanguard free and clear of the Net Profits Interest pursuant to 11 U.S.C. § 1141.

    iv.      Count IV. A turnover action for all proceeds and profits derived from the Pinedale Assets pursuant to section 11 U.S.C. § 542(a).

(ECF No. 1 at 9–13).

*Cross-Motions for Summary Judgment*

On August 27, 2018, the NPI Owners moved to dismiss this adversary proceeding.  (*See* ECF No. 12).  With the exception of Vanguard's claim that the NPI was discharged pursuant to § 1141, the Court granted the NPI Owners' motion to dismiss.  (*See* ECF No. 34 at 51, 53, 57).  In making this determination, the Court found it only had jurisdiction to adjudicate the discharge issue pursuant to § 1141(c).  (ECF No. 34 at 42–45).  The Court declined Vanguard's argument that the Court had authority to make an independent declaration regarding the rights and responsibilities of the parties under the leases.  (ECF No. 34 at 42–45).  However, the Court noted

---

Anadarko E&P Onshore.  (ECF No. 68-4 at 1, 17).  And Anadarko acquired the working interests in the leases burdened by the NPI through its merger with Lance.  (ECF No. 68-3 at 2).

[9] Shortly after Vanguard filed for chapter 11 protection on April 25, 2017, Ultra Resources, Inc. filed a proof of claim in Vanguard's main bankruptcy case.  This proof of claim was filed on account of "the working interest allocation of Hartman NPI."  (ECF No. 1 at 8).

that it may be necessary to determine whether the NPI ran with the land, meriting an independent assessment of the leases.  (ECF No. 34 at 42–43).

The NPI Owners filed two motions for summary judgment,[10] both seeking a determination that the NPI was not subject to discharge pursuant to Vanguard's confirmed plan.  (*See* ECF Nos. 45, 46).  The following arguments advanced by the NPI Owners are relevant here:

  i.     The Wyoming district court and the Wyoming Supreme Court determined that: (1) the NPI burdens the leases and did not terminate with the Pinedale Unit; and (2) the NPI is a covenant that runs with the land subject to the leases.  (ECF No. 45 at 19–21).

  ii.    Vanguard, as a successor-in-interest to Lance Oil & Gas Company, is bound the Wyoming courts' determinations.  (ECF No. 45 at 21–22).

  iii.   The documents creating the NPI demonstrate that the First Parties and Novi intended to create a real property interest rather than a contractual interest. (ECF No. 45 at 22–26).

The NPI Owners also sought dismissal of Vanguard's complaint (with prejudice) and an award of costs and attorneys' fees.  (ECF No. 45 at 31).

Vanguard filed a brief in opposition[11] asserting the NPI Owners were only entitled to a right to payment under the NPC, which was discharged by the Vesting Clause.  (ECF No. 52 at 2–3).  Furthermore, Vanguard argued that neither the Wyoming district court, nor the Wyoming Supreme Court, held that "the NPI is a real property interest and a covenant running with the land." (ECF No. 52 at 16–17).  Essentially, Vanguard argued that the Supreme Court reversed the district

---

[10] One of the NPI Owners' motions was styled: "Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction; or Alternatively, Motion for Summary Judgment No. 2."  (*See* ECF No. 46).  The Court finds that it has subject matter jurisdiction to determine issues relating to the dischargeability of claims and other encumbrances.  (ECF No. 34 at 5:8–14); *see also In re Gervin*, 300 F. App'x 293, 299 (5th Cir. 2008) (holding that a bankruptcy court has "related to" subject matter jurisdiction if the outcome of the proceeding could affect the administration of the estate in bankruptcy).

[11] Both parties filed numerous reply and response briefs to each other's motions for summary judgment. These briefs essentially repeated arguments made by the parties in support of their respective motions for summary judgment.  (*See generally* ECF Nos. 50–53, 57–59).

court.  For this assertion, Vanguard relied on the Supreme Court's reversal of the district court's

attempt to quiet title to the NPI, as well as on a footnote in which the Supreme Court declined to

decide whether the NPI was an interest in real property.  (ECF No. 52 at 16–19).  The footnote

provides:

> The [NPI Owners'] claim that the defendants [*sic*] concerns are only valid
> if the NPI is an interest in real property and it is, in fact, a contractual
> interest. The defendants protest that the [NPI Owners] argued the NPI was
> a real property interest in the district court and cannot, now, maintain that it
> is only a contractual right. Given our conclusion that the [NPI Owners] have
> provided evidence that the NPI vested in them and there is no evidence that
> any of the [NPI Owners'] predecessors reserved or currently claim any right
> to the NPI, *we do not need to determine whether the interest is contractual
> or realty.*

*Hartman I*, 226 P.3d at 913 (emphasis added).  Thus, Vanguard contends, the district court's

conclusion that the NPI burdened the leases was dicta and is unsupported by the Wyoming

Supreme Court's analysis.  (ECF No. 52 at 19).  Based on the Supreme Court's opinion, Vanguard

maintained that the NPI was not a covenant running with the land because Novi and the First

Parties did not intend to create a covenant running with the land.  (*See generally* ECF No. 52 at

20–52).  As such, Vanguard's position is that the NPI was discharged.

Vanguard filed its own motion for summary judgment, largely reiterating the arguments

made in opposition to the NPI Owners' motions.  Additionally, Vanguard emphasized that any

payment due under the NPI represented a prepetition "claim," which was discharged by this

Court's Confirmation Order.  (ECF No. 48 at 9–21).  Vanguard also advanced an argument that

this Court is not bound by any statement of the Wyoming district court that conflicts with the

Wyoming Supreme Court's Opinion in *Hartman I*.  (ECF No. 48 at 27).  Yet the thrust of

Vanguard's argument was that the NPI was discharged by the Confirmation Order and nothing

decided by the Wyoming Litigation precluded discharge.

*Hearing on the Cross-Motions for Summary Judgment*

On April 9, 2019, the Court held a hearing on the parties' cross-motions for summary judgment.  At the outset, the Court identified two issues it had to decide: (1) "if the covenant runs with the land, whether Vanguard can be excused from paying amounts that come due on a forward-looking basis;" and (2) "whether Vanguard's amount that they may have owed as of the petition date got discharged."  (ECF No. 63 at 18:6–13).  Between those two issues, the NPI Owners stipulated that the only remaining issue was the first—whether the NPI runs with the land, such that Vanguard is bound to pay the NPI.  (ECF No. 63 at 22:1–16; 23:6–25:1).[12]

The NPI Owners relied on the Wyoming Litigation and the holdings therefrom. Highlighting the Wyoming district court's holding, the NPI Owners' maintained that this Court is bound by (and therefore may not revisit) the determination that the NPI is a covenant running with the land and which continues to burden the leases now owned by Vanguard.  (ECF No. 63 at 8:20–11:11).  This holding, according to the NPI Owners, was affirmed by the Wyoming Supreme Court and carried forward in the district court's Amended Judgment.  (ECF No. 63 at 13:12–24).

The Court agreed that the Amended Judgment is "clear that [the NPI] runs with the land," but noted that Vanguard's argument centered on the notion that the statement "exceeded the remand" and is, therefore, not binding on this Court.  (ECF No. 63 at 13:25–14:7).[13]

---

[12] Notably, counsel for the NPI Owners conceded that any amount owed under the NPI pre-petition was a "claim" and was discharged at confirmation.  (ECF No. 63 at 22:1–23:4).

[13] In response to Vanguard's assertion that the Wyoming district court exceeded remand and, therefore, its finding regarding the nature of the NPI is not binding on this Court, the Court noted:

> [I]f a federal court finds that it has jurisdiction . . . in every decision there is an implicit finding of jurisdiction. [I]f you reach a decision and . . . don't have subject matter jurisdiction, the parties to the proceeding must appeal that decision [If the parties do not appeal that decision, they may not] then later not comply with it on the absence of subject matter jurisdiction. Subject matter jurisdiction is bootstrapped into the opinion. If that turns out to be Wyoming law and if this isn't dicta, then [Vanguard] is bound by it even if it exceeded the remand . . . .

Vanguard advanced two arguments: (1) that the NPI is not a covenant running with the land; and (2) even if the NPI is a covenant running with the land, the NPI did not survive bankruptcy.  (ECF No. 63 at 29:11–24).  As to the first issue, Vanguard argued that the district court exceeded remand because the Wyoming Supreme Court noted that it need not reach the question of whether the NPI was a real property interest.  (ECF No.63 at 32:12–18).  As to the second argument, Vanguard asserted that even if the NPI represented a covenant running with the land, the covenant was extinguished pursuant to § 1141 and the Court's Confirmation Order.  (ECF No. 63 at 56:9–58:3).

At the hearing's conclusion, the Court requested additional briefing on three issues:

i.    Whether Vanguard is a successor in interest to a party to the Wyoming district court decision, and if so, whether it is treated as a third party or whether it is bound as a first party to the litigation;

ii.   Whether under Wyoming law, there can be a subsequent attack on a final judgment, not appealed, challenging the jurisdiction of the district court following remand; and

iii.  Whether there exists language in Vanguard's Plan that would assist an interpretation of the vesting language contained in paragraph 17 of the Confirmation Order.

(ECF No. 63 at 64:23–66:11).

*Supplemental Briefing*

The parties filed post-hearing briefing in support of their respective motions for summary judgment addressing the above issues.  (*See generally* ECF Nos. 68–69).

In their supplement brief, the NPI Owners took the position that Vanguard is a successor-in-interest to the First Parties. And, because it is a successor-in-interest, Vanguard is bound by the outcome of the Wyoming Litigation.  (ECF No. 68 at 1–2).  The thrust of the NPI Owners'

---

(ECF 63 at 38:9–20).

argument rests on two propositions.  First, that Vanguard has, in a variety of ways,[14] assumed the status of a successor to the First Parties, who were parties to the Wyoming Litigation.  (ECF No. 68 at 2–3).  Second, the NPI Owners assert that Vanguard is in privity with the defendants in the Wyoming Litigation and is, therefore, bound by outcome of the Wyoming Litigation under Wyoming law.  (ECF No. 68 at 4).

In its supplemental brief, Vanguard argues it is not a successor-in-interest such that it is bound by the outcome of the Wyoming Litigation.  (ECF No. 69 at 3).  Vanguard argues that to have binding effect, the holdings or findings of a prior judgment must meet the elements of either claim or issue preclusion.  (ECF No. 69 at 5–6).  And to satisfy the elements of preclusion, the holding or finding must have been "necessary or essential" to the prior judgment.  (ECF No. 69 at 5–6).  In Vanguard's view, the statements regarding the nature of the NPI were neither necessary nor essential to the ultimate judgment in the Wyoming Litigation.  (ECF No. 69 at 6).  Thus, it does not matter whether Vanguard is or is not a successor-in-interest because the statements from the Wyoming judgment regarding the nature of the NPI do not satisfy the elements of issue or claim preclusion.  (ECF No. 69 at 7).

Addressing the effect of the Confirmation Order on the NPI, the NPI Owners assert that, notwithstanding the Vesting Clause, the Plan preserved the NPI. In support of their assertion, the NPI Owners point out that the Vesting Clause only discharged claims, liens, and other encumbrances not otherwise provided for in the Plan.  (ECF No. 68 at 8).  Seizing on the definition of "Royalty and Working Interests" in the Plan, the NPI Owners emphasize that "net profit interests" are explicitly included in this definition.  (ECF No. 68 at 8).  Hence, the NPI Owners

---

[14] The NPI Owner's contend that Vanguard conceded it is a successor by: (1) admitting it was party to the NPC in its main bankruptcy case; (2) relying on the judgments from the Wyoming Litigation with respect to its entitlement to be billed for its share of the NPI; and (3) by asserting present ownership of the working interests in the Pinedale Unit previously owned by Lance.  (*See* ECF No. 68 at 2–3).

contend the NPI was otherwise provided for in Plan as a "Royalty and Working Interest."  (ECF No. 68 at 11).  Therefore, as a "Royalty and Working Interest," the NPI was preserved under the RWI Clause.  (ECF No. 68 at 11).

In Vanguard's view, the Confirmation Order dealt with the NPI. Vanguard argues that the NPI could not have been preserved by the RWI Clause because it is not a "Royalty and Working Interest."  Pointing to the definition of "Royalty and Working Interests," Vanguard explains that a net profits interest, like the NPI, is only covered by the RWI Clause if it is a mineral, working, or royalty interest.  (ECF No. 69 at 9).  Consequently, "net profits interest," as used in the definition of "Royalty and Working Interest," is ambiguous.  (ECF No. 69 at 9).  According to Vanguard, this alleged ambiguity authorizes the Court to look to extrinsic evidence.  (ECF No. 69 at 9).  And the extrinsic evidence Vanguard points to is Wyoming law, which provides that a net profits interest has no independent meaning.  (ECF No. 69 at 9).  Instead, under Wyoming law, the instrument creating the net profits interest dictates the nature of the interest.  (ECF No. 69 at 9).  Vanguard concludes that, based on the NPC, the NPI here is not a mineral, working, or royalty interest under Wyoming law.  (ECF No. 69 at 10–12).  As such, the NPI was not preserved by the RWI Clause, but was instead discharged pursuant to the Vesting Clause.  (ECF No. 69 at 13).

After receiving the parties' supplemental briefing, the Court took the matter under advisement.  The Court issues this memorandum opinion resolving the parties' cross-motions for summary judgment.

## JURISDICTION

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O).  Pursuant to 28

U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FED. R. BANK P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d. Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp*., 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court always views the facts and evidence in light most favorable to the non-moving party. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc*., 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional [*sic*] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co*., 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact.  FED. R. CIV. P. 56(c)(1).  The Court need only consider the cited materials, but it may consider other materials in the record.  FED. R. CIV. P. 56(c)(3).  The Court should not weigh the evidence. *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996).  A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).  However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  FED. R. CIV. P. 56(c)(2).  Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Nola Spice Designs, L.L.C. v. Haydel Enter., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in

which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## DISCUSSION

The parties' dispute centers on a determination of whether the NPI was discharged by this Court's Confirmation Order. Resolving the dispute requires the Court to determine whether the Vesting Clause or the RWI Clause dictates the dischargeability of the NPI. Determining which clause affects the NPI requires consideration of the type of interest represented by the NPI. That is, whether the NPI is a royalty or working interest within the meaning of Vanguard's Plan, or whether it is an "encumbrance," which was discharged by the Confirmation Order. Given the extent to which the Wyoming Litigation addressed the nature of the NPI, as well as the rights and obligations thereunder, the Court must decide if it is bound by the outcome of the Wyoming Litigation. Specifically, whether the Wyoming district court's finding—that the NPI is a covenant running with the land—binds this Court. The binding effect, if any, of the district court's finding necessarily affects the Court's determination of whether the Vesting Clause or, instead, the RWI Clause controls the dischargeability of the NPI.

The Court finds that the NPI was preserved by the Plan. The inclusion of the RWI Clause in Vanguard's Plan preserved the NPI as a "Royalty and Working Interest" because the NPI falls within the Plan's definition of "Royalty and Working Interests." The definition of "Royalty and Working Interests" encompasses the NPI because it is a covenant running with the land, which, in this case, is identical to royalty interests under Wyoming law.

### *The Effect of the Wyoming Litigation on This Proceeding*

Vanguard and the NPI Owners disagree about the effect of the Wyoming Litigation on this proceeding. Vanguard says this Court is not bound by the Wyoming district court's finding that the NPI is a covenant running with the land because it is dicta. On the other hand, the NPI Owners argue that the district court's finding binds Vanguard to the same extent it bound Vanguard's predecessor, Lance. Preclusion law dictates that the NPI Owners are correct.

The demands of full faith and credit require federal courts to give state court judgments the same preclusive effect such judgments would enjoy in the courts of the rendering state. *In re Erlewine*, 349 F.3d 205, 210 (5th Cir. 2003). In giving preclusive effect to the judgments of state courts, a federal court will apply the preclusion law of the state from which the judgment was rendered. *Id.*; *see, e.g.*, *In re Whitaker*, 642 F. App'x 345, 347 (5th Cir. 2016) ("[T]he bankruptcy court correctly applied Texas's rules of preclusion because the preclusive judgment is from a Texas court."). Thus, the Court must apply Wyoming's preclusion rules to determine whether the judgments from the Wyoming Litigation bind Vanguard as a successor-in-interest.

Under Wyoming law, a party is precluded from relitigating a previously litigated claim (also known as, *"res judicata"*) if: "1) the parties [are] identical; 2) the subject matter [is] identical; 3) the issues [are] identical and relate to the same subject matter; and 4) the capacities of the persons [are] identical in reference to both the subject matter and the issues between them." *Clay v. Mountain Valley Mineral Ltd. P'ship*, 351 P.3d 961, 967 (Wyo. 2015) (quoting *Wyoming Med. Center, Inc. v. Wyo. Ins. Guar. Ass'n*, 225 P.3d 1061, 1065 (Wyo. 2010)). Determining whether preclusion bars a claim asserted by a party requires comparing the present proceeding to the prior proceeding. *Wyo. Med. Center*, 225 P.3d at 1065.

Issue preclusion (or "collateral estoppel"), under Wyoming law, precludes the relitigation of any issues previously decided by a court. An issue is precluded if: (1) the party against whom collateral estoppel is asserted was a party, or is in privity with a party, to the prior judgment; (2) the issue decided in the prior adjudication was identical to an issue presented in the present action; (3) the prior adjudication resulted in a judgment on the merits; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Eklund v. PRI Envtl., Inc.*, 25 P.3d 511, 517 (Wyo. 2001). Additionally, the issue previously litigated must have been essential to the prior judgment. *Claim of Moriarity*, 899 P.2d 879, 887 (Wyo. 1995) (citing *Delgue v. Curutchet*, 677 P.2d 208, 214 (Wyo. 1984)).

A.    Vanguard's Status as a Successor-in-Interest

A previously litigated claim or issue is not only binding on the parties to the prior proceeding, but also on parties in privity with parties to the prior proceeding. *Clay*, 351 P.3d at 967; *Worman v. Carver*, 44 P.3d 82, 89 (Wyo. 2002). Vanguard was not a party to the Wyoming Litigation; thus, for preclusion to apply, Vanguard must be in privity with some party to the Wyoming Litigation.

Under Wyoming law, a party is in privity with its predecessor when the party succeeds to an interest in substantially the same capacity as its predecessor. *In re Robert & Irene Redland Family Tr.*, 435 P.3d 349, 358 (Wyo. 2019). The touchstone of privity is the existence of a "close or significant" relationship between the parties, such that the predecessor acted as the "virtual representative" of the party against whom preclusion is asserted. *Worman*, 44 P.3d 82, 89 (Wyo. 2002) (citing *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972) and *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992)). A significant relationship exists where the predecessor's relation to the successor may be traced through a chain of title demonstrating that both the

predecessor and successor held the same interest in property.  *See Clay*, 351 P.3d at 967; *accord Grynberg v. L & R Expl. Venture*, 261 P.3d 731, 737 (Wyo. 2011) ("Among the legal relationships that bind a nonparty to an earlier judgment are preceding and succeeding owners of property." (citing *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008))).

Vanguard does not dispute that it acquired lease interests in the Pinedale Assets that were burdened by the NPI.  There is also a traceable chain of title from the working interest held by Vanguard today to an identical working interest held by Lance at the time of the Wyoming Litigation.  This link between Vanguard and Lance establishes that they are in privity with respect to the working interest burdened by the NPI.  *See Clay*, 351 P.3d at 967.  Vanguard succeeded to all the rights and obligations of the lease interests once held by Lance, including the burden of the NPI.  *See id.*

While Vanguard may have succeeded to Lance's rights and obligations, Vanguard's succession alone does not prevent relitigation of those rights and obligations.  Rather, Vanguard will be prohibited from challenging the rights and obligations established by the Wyoming Litigation, including the finding that the NPI is a covenant running with the land, if the remaining elements of claim or issue preclusion are satisfied.

      B.    <u>Claim Preclusion</u>

In Wyoming, successors-in-interest are precluded from relitigating a previously adjudicated *claim*, only if the subject matter of the prior claim, as well as the issues adjudicated therein, are identical to the present claim.  *Clay*, 351 P.3d at 967.  Determining whether a claim in the present proceeding is identical to a claim raised in the Wyoming Litigation requires the Court to compare the two proceedings.  *See Wyo. Med. Center*, 225 P.3d at 1065 ("The party asserting

that res judicata applies must analyze the elements of the relevant doctrine by comparing the earlier proceeding and the present one.").

A claim presents the same subject matter as a previously litigated claim when, in comparing the two proceedings, the later attempts to litigate rights or liabilities determined by the former proceeding. *See Clay*, 351 P.3d at 967–72 (determining whether a prior proceeding conclusively adjudicated a party's rights in real property to the extent that the party was precluded from reasserting a claim to the subject real property). In this adversary proceeding, Vanguard alleges it is entitled to a declaration that the Pinedale Assets vested in Vanguard free and clear of the NPI upon entry of this Court's discharge order. In the Wyoming Litigation, the NPI Owners sought a declaration that they owned the NPI and were entitled to payment of the NPI under the NPC. *Hartman I*, 226 P.3d at 910.[15]  Because Vanguard seeks to enforce its discharge here, while the NPI Owners sought to establish a right to payment in the Wyoming Litigation, the Court finds that the two proceedings address different rights and liabilities. Thus, the NPI Owners cannot establish an element of claim preclusion.

C.    Issue Preclusion

While claim preclusion does not apply, issue preclusion may nevertheless prevent relitigation of issues adjudicated in the Wyoming Litigation. *See Eklund*, 25 P.3d at 517 (noting that issue preclusion applies when issues, as opposed to claims, are decided by a prior adjudication).

1.    *The Issues Are Identical*

Successors-in-interest are precluded from relitigating an *issue* if the identical issue was adjudicated in a prior proceeding. *Eklund*, 25 P.3d at 517. In addition to requiring that a previously

---

[15] The Court dismissed Vanguard's claim seeking a declaration of title to the NPI, which may have sustained an assertion of claim preclusion.

litigated issue be identical to the allegedly precluded issue, issue preclusion requires the issue previously litigated to have been necessary or essential to the prior judgment. *Moriarity*, 899 P.2d at 887 (citing *Delgue*, 677 P.2d at 214). The requirement that an issue be "necessary or essential" to the prior judgment ensures that the subject issue was "actually and necessarily" litigated in the prior proceeding. *Delgue*, 677 P.2d at 214. Issues that were not necessary or essential to the prior judgment may be characterized as "dicta" and are not usually subject to appeal. *Id.* at 214–15 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. h (AM. LAW INST. 1982)).

Determining whether an issue was necessary or essential to a prior judgment demands a review the prior proceeding's record. *See, e.g., Moriarity*, 899 P.2d at 887. Upon review, the Court must determine whether the issue could have been presented in the prior proceeding and, if so, whether it was presented. *See id.*

The Wyoming district court's finding that the NPI is a covenant running with the land is the issue on which the NPI Owners rely here. In fact, the NPI Owners contend that the district court's finding is dispositive in this case. That is, the NPI Owners assert that covenants running with the land (*i.e.,* the NPI) are not "encumbrances" within the meaning of the Vesting Clause. The parties disagree over whether the district court's finding that the NPI is a covenant running with the land was necessary or essential to its judgment.

The Wyoming district court's finding was essential to its judgment. In its original judgment, the Wyoming district court concluded that Lance was "liable for payment of the NPI." *Hartman*, 2008 WL 7701150, at *18. The district court did so because Lance acquired working interests in the leases burdened by the NPI. *Id.* at *16. And, contrary to the defendants' claims, these leases in which Lance acquired interests continued to be burdened by the NPI even after the termination of the Pinedale Unit. *Id.* at *10, 15–16. Essential to its finding that the NPI continued

to burden the subject leases, was the district court's conclusion that the NPI was a covenant running with the land.  *Id.* at *18, 22.  So essential, in fact, that the district court directly linked Lance's *continued* obligation to pay the NPI to the finding that the NPI was a covenant running with the land.  *See id.* at *18 ("[Lance] by acquiring and accepting working interests in the Subject Leases became liable for payment of the NPI, which is a covenant running with the lands.").

That finding was not reversed.  On appeal, the Wyoming Supreme Court affirmed the district court's conclusion that the NPI did not terminate with the Pinedale Unit.  *Hartman I*, 226 P.3d at 910.  While the Supreme Court never used the term "covenant running with the land," there is nothing in its opinion criticizing the district court's finding to that effect.  What the Supreme Court did say was that "the Unit NPI Contract was clear and unambiguous and the NPI continued to encumber the relevant leases after contraction and/or termination of the Pinedale Unit."  *Id.*  The Court also noted that it "would arrive at the same result as the district court."  *Id.*  Thus, a claim that the Wyoming Supreme Court reversed the district court's finding that the NPI is a covenant running with the land is without merit.

Also without merit is the claim that the Wyoming Supreme Court's opinion demonstrates that the district court's finding that the NPI was a covenant running with the land was not essential to its judgment.  While it is true that the Supreme Court noted (in a footnote) that it need not decide whether the NPI was a realty or a contractual right to payment, the Court's intent was not to undermine the district court's reasoning.  *See id.* at 913 n.10.  The Supreme Court's intent is suggested by both the footnote's placement in a section not addressing the continued existence of the NPI, as well as by the absence of any reference to the district court's finding that the NPI was a covenant running with the land.  *Id.*  Rather, the footnote explains how the defendants (including

Vanguard's predecessors) argued that the NPI Owners were estopped[16] from asserting that the NPI was a contractual interest on appeal because, at trial, the Owners had argued that the NPI was a real property interest.  *See id.*  In the footnote, the Supreme Court declined to resolve the defendants' claim of estoppel on the merits because the NPI Owners had established a continued right to payment under the NPI.  *Id.*  That is, instead of negating the district court's finding, the Supreme Court adopted it in resolving the issue of judicial estoppel.

Moreover, the defendants' claim of judicial estoppel supports this Court's conclusion that the finding of the district court was essential to its judgment. The footnote describes both the NPI Owners' argument to the district court that the NPI was a real property interest and the defendants' recognition that the issue had already been litigated and decided by the district court.  *Id.*  Thus, the footnote confirms that the nature of the NPI was in dispute and resolved by the Wyoming Litigation.  *See Deluge*, 677 P.2d at 214.

The Wyoming district court's Amended Judgment further supports that the finding was essential to the district court's judgment.  The Wyoming Supreme Court's remand order contained no direction for the district court to reconsider its finding that the NPI is a covenant running with the land.  *Id.*  It does, however, state that "the district court properly granted summary judgment on the plaintiffs' claim that the NPI continued to encumber the relevant leases after the termination of the Pinedale Unit."  *Id.* at 939.  The order also directed the district court to proceed consistent with the Supreme Court's Opinion.  *Id.* at 940.  On remand, the district court issued an Amended Judgment.  In its Amended Judgment, the district court again concluded that Lance was liable "for payment of the NPI, which is a covenant running with the lands."  *Hartman II*, 2010 WL 10827093,

---

[16] Essentially, the Supreme Court responded to the defendant's claim of judicial estoppel.  "The doctrine of judicial estoppel is intended to prevent a party from playing fast and loose . . . Thus, when a party is successful in a position taken in a previous court proceeding, that position rises to the position of conclusiveness for purposes of later court proceeding."  *City of Gillette v. Hladky Const., Inc.*, 196 P.3d 184, 212 (Wyo. 2008).

at *12.  And the district court found that its Amended Judgment conformed with "the Opinion of

the Wyoming Supreme Court."  *Id.* at *1.  Even on remand, the district court maintained that Lance

had a continuing obligation to pay the NPI because the NPI was a covenant running with the land.

*Id.* at *12, 15.  No party appealed that finding.

Accordingly, the Court finds that the Wyoming district court's conclusion that the NPI is

a covenant running with the land, the same finding on which the NPI Owners rely here, was

essential to the district court's ultimate judgment in the Wyoming litigation.

2.     <em>The Wyoming Judgment Cannot be Collaterally Attacked</em>

Nevertheless, Vanguard argues that this Court may reconsider the judgment of the

Wyoming district court.  Vanguard asserts that the Wyoming district court exceeded the Supreme

Court's remand directive when it found that the NPI was a covenant running with the land in its

Amended Judgment.  Essentially, Vanguard argues that, under Wyoming law, the district court

lacked the jurisdiction necessary to make such a finding on remand.  And, as a result, Wyoming

law permits Vanguard to collaterally attack that finding here notwithstanding any preclusive effect

the Amended Judgment might otherwise have. Vanguard is incorrect.[17]

Judgments are presumptively valid under Wyoming law. *In re Estate and Guardianship of*

*Andrews*, 39 P.3d 1021, 1026 (Wyo. 2002) (quoting *Hume v. Ricketts*, 240 P.2d 881, 883 (Wyo.

1952)).  This presumption gives way only if a fundamental jurisdictional deficiency appears on

the face of the record.  *See id.*; *see also Linch v. Linch*, 361 P.3d 308, 313–14 (Wyo. 2015) (noting

that a lack of subject matter jurisdiction renders a judgment void).  A judgment issued in the

absence of jurisdiction is considered void and may be collaterally attacked at any time.  *Linch*, 361

P.3d at 313–14 (quoting *State ex rel. TRL by Avery v. RPL*, 772 P2d 1054, 1056–57 (Wyo. 1989)).

---

[17] The Court characterized this issue as "bootstrap[ped] jurisdiction" at its April 9, 2019 Hearing.  (*See* ECF No. 63 at 36:11–16, 38:8–22, 39:8–11).

The Wyoming Supreme Court has characterized a district court's failure to substantially comply with a remand order as "equivalent [to] proceeding without jurisdiction." *Matter of Adoption of BBC*, 849 P.2d 769, 772 (Wyo. 1993). However, this Court was presented with no Wyoming authority sustaining a collateral attack on a judgment issued in excess of remand.[18] Vanguard's argument depends on whether a judgment not issued in substantial compliance with a remand order is void under Wyoming law.

Wyoming law distinguishes between judgments that are void and judgments that are merely *voidable*. *Linch*, 361 P.3d at 313–14. A judgment is void only when the issuing court lacked "an arguable basis for jurisdiction." *Id.* at 314 (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)). Such a fundamental lack of jurisdiction will only exist in "exceptional circumstances." *Id.* Voidable judgments, in contrast, are those issued through an erroneous exercise of jurisdiction. 46 Am. Jur. 2d *Judgments* § 19 (2020);[19] *see also id.* (quoting *Estate of Dahlke ex rel. Jubie v. Dahlke*, 319 P.3d 116, 127 (Wyo. 2014)). Under Wyoming law, voidable judgments may not be collaterally attacked but must instead be corrected through direct appeal. *Linch*, 361 P.3d at 314 (quoting *Estate of Dahlke*, 319 P.3d at 127).

In *Adoption of BBC*, the Wyoming Supreme Court described the district court's failure to substantially comply with its remand order as "equivalent [to] proceeding without jurisdiction." 849 P.2d at 772. The Court did not, however, describe the district court's judgment as void. Rather, the district court's failure to substantially comply with a remand order was described as "error." *Id.* Moreover, *Adoption of BBC* is not the only Wyoming case addressing a lower court's

---

[18] Consequently, the Court must determine how the highest court of Wyoming would rule on the issue. *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992).

[19] The Court is confident that its reliance on American Jurisprudence is not misplaced. The Wyoming Supreme Court has frequently relied on the legal encyclopedia when addressing the subject of judgments. *See, e.g.*, *Gillis v. F & A Enters.*, 934 P.2d 1253, 1255 (Wyo. 1997); *State ex rel. TRL by Avery v. RLP*, 772 P.2d 1054, 1056 (Wyo. 1989); *Matter of TRG*, 665 P.2d 491, 498 (Wyo. 1983).

failure to substantially comply with a remand order.  Yet none of the cases addressing the issue describe a lower court's non-compliant judgment as void.  Instead, like *Adoption of BBC*, those cases refer to a lower court's failure to adhere to a remand directive as "error."  *See, e.g., Smith Keller & Accocs. v. Dorr*, 4 P.3d 872 (Wyo. 2010); *Sanders v. Gregory*, 652 P.2d at 26 (Wyo. 1982); *Potter v. Gilkey*, 570 P.2d 449, 454 (Wyo. 1977).[20]  The Wyoming Supreme Court knows how to describe a judgment as void when it is, in fact, void.  *See In Interest of WM*, 778 P.2d 1106, 1106–07, 1112 (Wyo. 1989) (holding that the misapplication of a statute was "an erroneous application of the law" that did not render a judgment "void").  But "void" is never the descriptor used by the Wyoming Supreme Court when it comes to a lower court's judgment exceeding remand.

Wyoming cases use the word "error" to describe judgments that are voidable, not void.  Given the continued use of the word "error" to describe a lower court's non-compliance with remand, the Court finds that a Wyoming lower court's failure to adhere to its remand directive is an erroneous exercise of jurisdiction.  Under Wyoming law, an erroneous exercise of jurisdiction does not render a judgment void and subject to collateral attack.  *See Linch*, 361 P.3d at 314 (quoting *Estate of Dahlke* 319 P.3d at 127).  Instead, a judgment based on an erroneous exercise of jurisdiction is voidable and must be corrected on appeal.  *See id*.

Vanguard does not claim that the district court lacked subject matter jurisdiction to adjudicate the NPI Owners' claims in the Wyoming Litigation.  Nor did any other party.  In fact, the Wyoming district court explicitly found it had subject matter jurisdiction over the suit in both its original judgment and in its Amended Judgment.  *Hartman*, 2008 WL 7701150, at 15; *Hartman II*, 2010 WL 10827093, at *10.  Vanguard's argument is wholly centered on the district court's

---

[20] Notably, a Sixth Circuit case on which the Wyoming Supreme Court relied in *Potter* also describes a lower court's failure to comply with a remand order as "error."  *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967).

alleged failure to substantially comply with the Supreme Court's remand directive.  Wyoming law requires such arguments to be advanced on direct appeal, not ten years later in a collateral proceeding in a bankruptcy court in Texas.  Vanguard may not now collaterally attack the Amended Judgment of the Wyoming district court.

3.    *The Amended Judgment is a Final Judgment on the Merits*

Successors-in-interest may be precluded from relitigating issues litigated in proceedings that result in a final judgment on the merits.  *See Eklund*, 25 P.3d at 517.  A final judgment on the merits is one that is "conclusive as to the rights of the parties and their privies."  *Barrett v. Town of Guernsey*, 652 P.2d 395, 398 (Wyo. 1982).  A party's failure to exercise its right to appeal does not make a judgment any less final.  *Slavens v. Bd. of Cty. Comm'rs for Uinta Cty.*, 854 P.2d 683, 686–87 (Wyo. 1993).

The Amended Judgment is a final judgment on the merits with respect to the finding that the NPI is a covenant running with the land.  The Amended Judgment established that the NPI Owners held a continuing right to payment of the NPI and that Vanguard's predecessor was obligated to pay a share of the NPI.  The NPI Owner's right to payment resulted from the fact that the NPI is a covenant running with the land, which continued to burden the working interest now held by Vanguard.  The Amended Judgment is a final judgment on the merits to which both the NPI Owners and Vanguard, as a successor-in-interest, are parties.  Had Vanguard's predecessor, Lance, been dissatisfied with the Amended Judgment, it could have appealed again.  Lance did not.  The Amended Judgment is final with respect to Vanguard.

4.    *The Wyoming Litigation was a Full and Fair Opportunity to Litigate the Nature of the NPI*

Successors-in-interest are precluded from relitigating issues that their predecessors had a "full and fair opportunity" to litigate.  *Eklund*, 25 P.3d at 517.  In some instances, a "full and fair

opportunity" turns on whether a party faced *significant* procedural limitations, such as an inability to appeal. *Martinez v. Hooker*, 601 F. App'x 644, 649 (10th Cir. 2015) (quoting *Salguero v. City of Clovis*, 366 F.3d 1168, 1174 (10th Cir. 2004)). In others, the focus is on whether the "incentive to litigate fully the issue . . . was limited by the nature or relationship of the parties." *Id.* (quoting *Salguero*, 366 F.3d at 1174). However, a "full and fair *opportunity*" refers to just that, an *opportunity*. *See id.* (holding that issue preclusion prevents relitigation where there was a "full and fair opportunity to litigate—opportunity being the operative word—" in the prior proceeding).

Lance had a full and fair opportunity to litigate the NPI issue and whether the NPI terminated with the Pinedale Unit. Vanguard does not claim that Lance faced significant procedural limitations. Lance actually litigated the continued existence of the NPI, as well as the nature of the NPI. Specifically, at the trial-stage of the Wyoming Litigation, Lance had an opportunity to defend against the NPI Owners' claim that the NPI was a real property interest. *See Hartman I*, 226 P.3d at 913 n.10 (noting that the NPI Owners argued at trial that the NPI was an interest in real property). Not only did Lance have an opportunity to litigate the nature of the NPI at trial, it explicitly attacked the finding. Brief of Appellant Lance Oil & Gas Company, Inc. at 21–22, *Ultra Resources, Inc. v. Hartman*, 226 P.3d 889 (Wyo. 2010), 2009 WL 1872357, at *21. Lance had its day in court. Vanguard is not entitled to another day of litigation over the nature of the NPI.

The Court is cognizant that issue preclusion cannot be applied in a rote fashion. Instead, the "decision will necessarily rest on the trial court['s] sense of justice and equity." *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 334 (1971). Given the extensive litigation that has already occurred over the NPI and its nature, as well as Vanguard's close and significant relation to that litigation, the Court's sense of justice and equity counsels against

allowing Vanguard to litigate the issue once again here.  Accordingly, the Wyoming district court's holding that the NPI is covenant running with the land is binding on this Court and cannot now be relitigated.

### *The Effect of the Confirmation Order.*

The parties disagree over the effect of the Confirmation Order on the NPI.  Vanguard believes that the NPI was discharged by the Confirmation Order as an "encumbrance."  The NPI Owners assert that the RWI Clause in the Plan preserved the NPI. Determining which provision actually affected the NPI requires the Court to interpret the language of both the Plan and the Confirmation Order.  Based on the plain language of the Confirmation Order and the RWI Clause, the Court finds that the RWI Clause left the NPI unaffected by Vanguard's bankruptcy.

A.    Legal Standard for Interpreting the Plan and Confirmation Order

This Court maintains jurisdiction to interpret and construe its Confirmation Order, the Plan, and related plan documents.  *In re Nat'l Gypsum Co.*, 219 F.3d 478, 483 (5th Cir. 2000); *see also In re Davis Offshore, L.P.*, 644 F.3d 259, 262 n.3 (5th Cir. 2011) ("We are persuaded that [the bankruptcy court] had core jurisdiction to interpret the Plan and confirmation order pursuant to 28 U.S.C. § 157(b).").  A bankruptcy court interprets its orders and plans of reorganization according to the rules of contract interpretation.  *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012).  At the summary judgment stage, a genuine issue of material fact exists "only when there is a choice of reasonable interpretations . . . concerning the parties' intent."  *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (quoting *Amoco Prod. Co. v. Texas Meridian Res. Exploration, Inc.*, 180 F.3d 664, 669 (5th Cir.1999)).  Thus, summary judgment is appropriate only if the language of the contract (*i.e.,* the Plan) is unambiguous or if both parties agree on the meaning of an arguably ambiguous term.  *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182,

1192 (2d Cir. 1996); *see also Southern Nat. Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir. 1986) ("[A court] may not grant summary judgment when a contract is ambiguous and the parties' intent presents a genuine issue of material fact.").

Whether a contract term is ambiguous is a question of law. *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990).[21] A contract term is unambiguous where the term has a "definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference if opinion." *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978). A finding of ambiguity may not be based on an inquiry that considers the disputed term in isolation; it must instead be based on an examination of the contract as a whole. *Kass v. Kass*, 696 N.E.2d 174, 180–81 (N.Y. 1998) (quoting *William C. Atwater & Co. v. Panama R. Co.*, 159 N.E. 418, 419 (N.Y. 1927)). However, a reasonable interpretation of a contract cannot be defeated on summary judgment by a mere allegation of ambiguity. *Weiner v. Anesthesia Assocs. of W. Suffolk, P.C.*, 610 N.Y.S.2d 608, 609 (N.Y. App. Div. 1994) (citing *Mallad Const. Corp. v. Cty. Fed. Sav. & Loan Ass'n*, 298 N.E.2d 96, 99–100 (N.Y. 1973)). Instead, the party asserting the existence of ambiguity must produce extrinsic evidence supporting a finding of ambiguity. *Id.*; *see also Sheridan v. Nationwide Ret. Sols., Inc.*, 313 F. App'x 615, 617 (4th Cir. 2009) ("If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact."). Nevertheless, a contract must be interpreted in a practical manner, which accords with the parties' reasonable expectations. *Sutton v. E. River Sav. Bank*, 435 N.E.2d 1075, 1078 (N.Y. 1982) (quoting *Brown Bros. Elec. Contrs. V. Beam Const. Corp.*, 361 N.E.2d 999, 1001 (N.Y. 1977)).

---

[21] Under the terms of the Plan, it is to be construed in accordance with New York law. (Case No. 17-30560, ECF No. 1096 at 26).

B.     The Language of the Confirmation Order

Interpretation of a contract begins by examining the "four corners" of the document itself. *Dean v. City of Shreveport*, 438 F.3d 448, 460–61 (5th Cir. 2006).  The Confirmation Order provides that in the event of inconsistency between the Plan and the Confirmation Order, the Order controls.  (Case No. 17-30560, ECF No. 1109 at 71).  The Court will first look to the terms of its Confirmation Order.

The Confirmation Order's Vesting Clause, provides that "[p]ursuant to sections 1141(b) and (c) of the Bankruptcy Code, *except as otherwise provided in the Plan*," property of the estate will vest in Vanguard free and clear of all "Claims, Liens, charges or other encumbrances."  (Case No. 17-30560, ECF No. 1109 at 40 (emphasis added)).  By its own terms, the Vesting Clause operates as a catchall discharge for any "Claims, Liens, charges or other encumbrances" not otherwise addressed in the Plan.  Thus, the Order requires the Court to look to the Plan to determine whether it addresses the NPI.

C.     The Language of the Plan

The Plan provides for the "Preservation of Royalty and Working Interests." (Case No. 17-30560, ECF No. 1096 at 58).  Under the Plan's RWI Clause, royalty and working interests were left undisturbed by the debtors' reorganization.  Further, the Plan provides a definition for "Royalty and Working Interests."  That definition includes "net profit interests." (Case No. 17-30560, ECF No. 1096 at 21).

For this Court to find that the RWI Clause preserved the NPI on summary judgment, the Court must find that the language of the RWI Clause did so unambiguously without the need for extrinsic proof.  *Nowak*, 81 F.3d at 1192.  On this point, the NPI Owners bore the burden of establishing that there was no genuine dispute of material fact as to the effect of the RWI Clause

on the NPI.  FED. R. CIV. P. 56(a); *see also Nowak*, 81 F.3d at 1192.  Attempting to satisfy this burden, the NPI Owners allege that the RWI Clause, in conjunction with the definition of "Royalty and Working Interests," speaks for itself.  Given the inclusion of "net profit interests" in the definition of "Royalty and Working Interests," the NPI Owners make a showing sufficient to shift the burden to Vanguard to demonstrate a genuine dispute over the meaning of the RWI Clause. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.

To overcome its burden, Vanguard must demonstrate either that the term is ambiguous or that there is no genuine dispute of fact that the RWI Clause does *not* preserve the NPI.  The Court finds that Vanguard failed to meet its burden.

The Plan is explicit in its preservation of "Royalty and Working Interests."  (Case No. 17-30560, ECF No. 1096 at 53).  However, the Plan provides that "any right to payment arising from a Royalty and Working Interest" will be discharged as a general unsecured claim.  (Case No. 17-30560, ECF No. 1096 at 53).  The NPI is not "a right to payment" arising from a royalty or working interest within the meaning of the Plan.  The "right to payment" referenced in the RWI Clause is different than the "right to payment" established by the Wyoming Litigation.  Rather, the "right to payment" referenced in the Plan's RWI Clause refers to "claims" as defined by the Bankruptcy Code.  *See* 11 U.S.C. § 101(5)(A).  It is clear Vanguard intended the RWI Clause's discharge language to discharge pre-petition "claims" for payment arising from royalty or working interests because Vanguard classified these "right[s] to payment" as "General Unsecured Claim[s]."  Here, however, the NPI Owners never filed a proof of claim in Vanguard's main bankruptcy.  (ECF No. 68 at 13).  Furthermore, the NPI Owners concede that, as of the petition date, Vanguard owed nothing on the its NPI Obligation.  Consequently, this provision of the RWI Clause did not discharge the "right to payment" represented by the NPI.

The Plan explicitly includes "net profit interests" under the umbrella of its preservation of "Royalty and Working Interests."  (Case No. 17-30560, ECF No. 1096 at 26).  However, the term "net profits interest" is qualified.   Under the definitional section of the Plan, "Royalty and Working Interests" are "*working interests* granting the right to exploit [minerals]" and "other royalty or mineral interests, including . . . net profit interests."  (Case No. 17-30560, ECF No. 1096 at 26).  Thus, reviewing the definition of "Royalty and Working Interests" in its entirety, a net profit interest will be preserved under the RWI Clause only if it is a mineral or royalty interest.   *See Kass*, 696 N.E.2d at 180–81 ("Where the document makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the [agreement]." (internal quotation marks omitted) (quoting *Williams Press, Inc. v. State*, 335 N.E.2d 299, 302 (1975))).

Under Wyoming law, a "net profits interest in an oil and gas lease has no independent meaning." *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 976 (Wyo. 1994).[22]  Instead, the type of interest created by a "net profits interest" is determined by the instrument creating the interest.  *Id.* (citing *Christy v. Petrol Res. Corp.*, 691 P.2d 59, 62 (N.M. 1984)).  The Wyoming Litigation established that the NPI is a covenant running with the land.  There, the district court also concluded that the NPI is "analogous to royalty interest."  *Hartman*, 2007 WL 7118254, at 5.  Wyoming law confirms the district court was correct.

In *Ferguson*, the Wyoming Supreme Court was required to determine whether a net profits interest was a royalty interest.  There the Court held that the *Ferguson* NPI was an interest similar

---

[22] It is reasonable to assume Vanguard contemplated that the RWI Clause would affect interests arising under Wyoming law.  (*See* Case No. 17-30560, ECF Nos. 7 at 6, 10–11, 13–14; 1139 at 1–2, 4 n.9).  Indeed, in its supplemental brief, Vanguard cites Wyoming authority in support of its argument that the NPI is not protected by the RWI Clause.  Additionally, parties to a contract are charged with knowledge of the law.  *Kirkwood v. CUNA Mut. Ins. Soc.*, 937 P.2d 206, 211 (Wyo. 1997).  Thus, a consideration of Wyoming law is necessary to determine whether it was reasonable for Vanguard to expect that the NPI would *not* be preserved by the RWI Clause.  *See Sutton*, 435 N.E.2d at 1078.

to a royalty interest. *Ferguson*, 884 P.2d at 977. Driving the Court's determination was language in the creating instrument, which purported to grant the holder an interest in the proceeds of oil and gas produced. *Id.* Additionally, the instrument there contained a clause granting the *Ferguson* NPI holder an interest in "hydrocarbons produced, saved, and sold," which is language typically used to create a non-participating royalty interest. *Id.* (citing 1 KUNTZ, OIL AND GAS, § 16.2 (1987)). Furthermore, the Supreme Court held that the owners of the *Ferguson* NPI held a personal property right in the proceeds from oil and gas sold after it was removed from the ground. *Id.* Therefore, based on the granting instrument, the Court determined that the *Ferguson* NPI was identical to a royalty interest. *Id.* at 978.

The NPC created the NPI here. The NPC is not as clear as the instrument in *Ferguson* because it does not purport to grant the NPI Owners an interest in "hydrocarbons produced, saved, and sold." *See id.* at 977. Nevertheless, the NPC, in granting the NPI, created an interest almost identical to the *Ferguson* NPI. For instance, the NPC granted a 5% interest in net profits "resulting from operations for oil and gas." (ECF. No. 2 at 2). This language is practically identical to the *Ferguson* NPI, which granted an interest in net profits realized "from all operations on the [subject] leases." *Ferguson*, 884 P.2d at 976. Moreover, the NPC's language is consistent with Wyoming law that recognizes that non-participating royalty interests entitle their holders to share in the proceeds of oil and gas production. *Id.* at 977.

Furthermore, the NPI here was found to be a covenant running with the land. While the *Ferguson* NPI was not characterized as a covenant running with the land, the Wyoming Supreme Court recognized that net profit interests could be covenants running with the land. *Id.* at 976–77. *Ferguson* did not, however, pass on whether a net profits interest in the form of a covenant running with the land can be a royalty interest. And, in fact, held that the *Ferguson* NPI was a personal

property interest, not a real property interest in the form of a covenant running with the land. *Ferguson*, 884 P.2d at 977.

Under Wyoming law, a royalty interest can be both an interest in real property and personal property. *Connaghan v. Eighty-Eight Oil Co.*, 750 P.2d 1321, 1324 (Wyo. 1988); *Denver Joint Stock Land Bank of Denver v. Dixon*, 122 P.2d 842, 845 (Wyo. 1942). A requirement to pay a royalty is generally held to be a covenant running with the land. *Bank of Denver*, 122 P.2d at 849–50. Thus, *Ferguson's* emphasis on the personal property right represented by the NPI there does not foreclose the NPI here from taking the form of a royalty interest. Not only is such a finding not foreclosed by *Ferguson*, the finding that the NPI continued beyond the termination of the Pinedale Unit because it is a covenant running the land is consistent with Wyoming law requiring payment of royalty interests. *See id.* That is, under Wyoming law, royalty payments are due because royalty interests are covenants running with the land. *Id.*

Royalty interests are generally free from production costs. *Heritage Res., Inc. v. NationsBank, Co.*, 939 S.W.2d 118, 121 (Tex. 1996) (citing 3 Kuntz, Oil & Gas Law, § 42.2 (1989)). The NPI here is not free from production costs. (ECF No. 2 at 3–4). Yet the Wyoming Supreme Court did not consider whether the *Ferguson* NPI was burdened by production costs. *See generally Ferguson*, 884 P.2d at 975–78. Thus, the inclusion or exclusion of production costs does not necessarily dictate whether a net profits interest is or is not a royalty interest. What mattered to the *Ferguson* court was that the NPI holders there were granted a share of oil and gas production. *Id.* at 977. The same is true of the NPI Owners in this case.

The Court is persuaded that the NPI Owners were granted an interest that differs from a royalty interest, as defined by Wyoming law, in name alone. Perhaps a difference in name alone would be enough to sustain Vanguard's contention that the RWI Clause is too ambiguous to

support summary judgment.  However, Vanguard unambiguously included "net profit interests" in the definition of "Royal and Working Interests."  The RWI definition, in light of the fact that the NPI is substantively identical to a royalty interest, unambiguously includes the NPI.  A belief to the contrary would be an unreasonable interpretation of the RWI Clause.  *See Sutton*, 435 N.E.2d at 1078.  The Plan's RWI Clause preserved the NPI, leaving it unaffected by Vanguard's Plan.

The NPI was not stripped from the Pinedale Assets by the Confirmation Order's Vesting Clause.  For the Vesting Clause to have affected the NPI, treatment of the NPI could not have been provided for elsewhere in the Plan.  But it was; the Court need not determine whether the NPI is an "encumbrance" within the Vesting Clause.

## CONCLUSION

There is no genuine issue of material fact as to whether the NPI was discharged by the Confirmation Order entered by this Court.  To that extent, the NPI Owners' Motion for Summary Judgment is Granted.  Vanguard's Motion for Summary Judgment is Denied.  Costs are awarded to the NPI Owners.  Within 14 days, the parties must either (i) stipulate as to whether attorneys' fees should be awarded and the amount of such fees; or (ii) file a notice requesting a hearing on the award of attorneys' fees.  After resolution of the fee issue, the Court will issue a separate Judgment denying the relief sought in the Complaint.

SIGNED 12/11/2020

Marvin Isgur
United States Bankruptcy Judge